UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
JOSEPH COMMISSO,

                Plaintiff,

        - against -

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-4872 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Giuseppe "Joseph" Commisso brings this action under 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration's ("SSA") denial of his claim for Disability Insurance Benefits ("DIB") on August 12, 2020.  The parties have cross-moved for judgment on the pleadings.  (Dkts., 13, 15.)  For the reasons stated below, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's motion. The case is remanded for further proceedings consistent with this Memorandum and Order.

## BACKGROUND

**I.    Plaintiff's Personal and Medical History**

Plaintiff was born in Italy on November 5, 1956 and attended school there for eight years. (Plaintiff's Motion for Judgment on the Pleadings ("Pl. Br."), Dkt. 13, at 2.)  From approximately 1976 to 2016, Plaintiff worked full time as a hairdresser.  (Administrative Transcript ("Tr."[1]), Dkt. 12. at 18.)

---

[1] Page references prefaced by "Tr." refer to the continuous pagination of the Administrative Transcript and not to the internal pagination of the constituent documents.

1

On September 26, 2016, Plaintiff sought treatment for lower back pain at Northwell Health's emergency department, where he was treated by Dr. Helen Block.  (*Id.* at 49, 271.)  Plaintiff reported that his pain started five days prior to seeking treatment and rated his pain as a 10/10.  (*Id.* at 271, 273.)  Plaintiff's back pain improved after taking Advil, and he was discharged later that day.  (*Id.* at 274.)

Plaintiff again sought treatment at the Northwell Health emergency department on December 24, 2016, with complaints of "fatigue, a nonproductive cough, shortness of breath, decreased appetite, and chest pain."  (*Id.* at 49.)  He was admitted to the critical care unit and diagnosed with acute congestive heart failure, unspecified.  (*Id.*)  Plaintiff underwent open-heart surgery on December 27, 2016 to replace his aortic valve, and on December 29, 2016, he was diagnosed with acute endocarditis[2] of the aortic valve, with colonies of bacteria.  (*Id.* at 50.)  Plaintiff was discharged on January 9, 2017.[3]  (*Id.*)

On January 27, 2017, Plaintiff began seeing Dr. Joe Lau, a cardiologist, for post-operative care.  (*Id.* at 632–36.)  Dr. Lau noted that Plaintiff was recovering well and prescribed medication to manage his heart condition.  (*Id.*)  To find the cause of his endocarditis, Plaintiff underwent a colonoscopy on February 6, 2017, which detected adenocarcinoma[4] of the colon, moderately

---

[2] "Endocarditis is a life-threatening inflammation of the inner lining of your heart's chambers and valves (endocardium)."  Mayo Clinic, "Endocarditis," https://www.mayoclinic.org/diseases-conditions/endocarditis/symptoms-causes/syc-20352576 (last visited 3/3/2022).

[3] The Administrative Law Judge's decision lists Plaintiff's discharge date as January 6, 2017 (Tr. at 50), but Plaintiff's medical records show that the discharge date was January 9, 2017 (*id.* at 499).

[4] Adenocarcinomas are "[c]ancers that start in glandular tissues that make mucus or fluid, such as the lung, breast, prostate, or colon."  Johns Hopkins Medicine, "Overview of Cancer," https://www.hopkinsmedicine.org/health/conditions-and-diseases/cancer#:~:text=Adenocarcinomas.,type%20(subtype)%20of%20carcinomas (last visitied 3/3/2022).

2

differentiated. (*Id.* at 507.) Plaintiff then saw Dr. John Procaccino for a surgical consult on February 16, 2017. (*Id.* 485.) On March 14, 2017, Dr. Procaccino performed laparoscopic surgery on Plaintiff to remove the cancerous mass from his colon. (*Id.* at 476.) At his follow-up appointment with Dr. Procaccino on March 29, 2017, Plaintiff reported hypersensitivity in his abdomen. (*Id.* at 480.) Dr. Procaccino advised Plaintiff to maintain a "low-residue diet" and to avoid strenuous activity. (*Id.*)

On April 10, 2017, Plaintiff underwent a second open-heart surgery to replace his aortic valve after a recurrence of infectious endocarditis. (*Id.* at 646, 418.) After surgery, Plaintiff had follow-up appointments with Dr. Lau on June 8 and September 18, 2017, and on January 25, 2018. (*Id.* at 309–15.) On these occasions, Dr. Lau noted that Plaintiff was doing well, that he was exercising without complaints, and that he was "stable and asymptomatic from the cardiac standpoint." (*Id*. at 309–315, 50.)

Plaintiff began seeing Dr. Vincent Vinciguerra, an oncologist, on June 16, 2017. (*Id.* at 418.) Dr. Vinciguerra noted that Plaintiff reported "on rectal back pain responding to nonsteroidal medications" (*id*. at 419), and suggested Plaintiff maintain his low-fat diet and exercise (*id.* at 420). Dr. Vinciguerra indicated that Plaintiff's cancer was unlikely to require further treatment. (*Id.*) Plaintiff again visited Dr. Vinciguerra on August 7, 2017. (*Id.* at 568.) Dr. Vinciguerra noted that Plaintiff was doing well, but had "chronic low back pain," and was "restricted in physically strenuous activity." (*Id.* at 569.)

On September 1, 2017, Plaintiff was examined by Dr. Matthew Yovino, a primary care physician, for an annual physical examination. (*Id.* at 533.) Dr. Yovino noted that Plaintiff exercised 6 times per week doing cardio and weightlifting, and that Plaintiff denied muscle weakness and loss of strength. (*Id.* at 534–35.)

3

None of the medical records provided by Plaintiff's treating physicians included a medical opinion about Plaintiff's abilities or physical limitations. (*See* Tr. at 256–465, 474–509, 530–60, 565–658).

## II. Procedural History

Plaintiff filed an application for DIB on January 11, 2018, claiming that he had been disabled since December 24, 2016 due to stage two colon cancer, heart conditions, rheumatoid arthritis, and back pain. (*Id.* at 35, 50.) The SSA denied his claim on June 7, 2018. (*Id.* at 65.) Plaintiff requested and appeared for a hearing before Administrative Law Judge ("ALJ") Margaret A. Donaghy on May 14, 2019. (*Id.* at 15.) By decision dated September 16, 2019, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act (the "Act"). (*Id.* at 47–58.) The SSA Appeals Council denied Plaintiff's request for further review of the ALJ's decision on August 12, 2020. (*Id.* at 5–7.) Thereafter, Plaintiff timely commenced this action.[5]

---

[5] Under Section 405(g),

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless [Plaintiff] makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)). Applying this standard, the Court determines that Plaintiff received the Commissioner's final decision on August 17, 2020, *i.e.*, five days after Plaintiff's request to appeal the ALJ's decision was denied on August 12, 2020, and that Plaintiff's filing of the instant action on October 9, 2020—58 days later—was timely. (*See generally* Complaint, Dkt. 1.)

4

### III. The ALJ's Decision

#### A.     The Five-Step Inquiry

ALJs follow a five-step inquiry to evaluate disability claims. 20 C.F.R. § 404.1520(a). The plaintiff bears the burden of proof for the first four steps, and the burden shifts to the Commissioner for the fifth and final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation omitted). First, the ALJ determines whether the plaintiff is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the answer is yes, the plaintiff is found not disabled. *Id.*

If the answer is no, then the ALJ proceeds to the second step to determine whether the plaintiff has a severe impairment. *Id.* § 404.1520(a)(4)(ii). An impairment is severe when it "significantly limits [the plaintiff's] physical or mental ability to do basic work activities." *Id.* § 404.1522(a). If the plaintiff does not suffer from an impairment or combination of impairments that is severe, the plaintiff is found not disabled. *Id.* § 404.1520(a)(4)(ii).

If the ALJ finds that plaintiff does suffer from an impairment or combination of impairments that is severe, the ALJ proceeds to the third step and considers whether the impairment(s) meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). *Id.* § 404.1520(a)(4)(iii); *see also id.* pt. 404, subpt. P, app.1. If the ALJ finds that the plaintiff has one of the listed impairments, the plaintiff is found disabled under the Act. *Id.* § 404.1520(a)(4)(ii).

If the plaintiff does not have a listed impairment, the ALJ must determine the plaintiff's residual functional capacity ("RFC")[6] before moving on to steps four and five. *Id.* § 404.1520(e).

---

[6] "[A]n individual's RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (*per curiam*) (internal quotation marks

5

To determine the plaintiff's RFC, the ALJ must consider the plaintiff's "impairment(s), and any related symptoms, [that] may cause physical and mental limitations that affect what [the plaintiff] can do in a work setting." *Id.* § 404.1545(a)(1). The ALJ is responsible for assessing the plaintiff's RFC "based on all the relevant evidence in the case record." *Pellot v. Comm'r of Soc. Sec.*, No. 18-CV-3337 (AMD), 2019 WL 3500919, at *1 (E.D.N.Y. July 31, 2019) (citation omitted). The ALJ then uses the RFC finding in step four to determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the plaintiff can perform past relevant work, then the plaintiff is found not disabled. *Id.* If, however, the plaintiff cannot perform past relevant work, or if no past relevant work exists, the ALJ will proceed to step five and determine whether the plaintiff, given their RFC, age, education, and work experience, has the capacity to perform other substantial gainful work in the national economy. *Id.* § 404.1520(a)(4)(v). If the answer is yes, the plaintiff is found not disabled; otherwise, the plaintiff is found disabled and is entitled to benefits. *Id*.

### B. The ALJ's Decision

Beginning with step one, ALJ Donaghy found that Plaintiff had not engaged in substantial gainful activity "since December 24, 2016, the alleged onset date." (Tr. at 52.) At step two, the ALJ determined that Plaintiff had three severe impairments: "status post-adenocarcinoma of colon, cardiac impairment, [and] status post-aortic valve replacement." (*Id.*) The ALJ further noted that Plaintiff's impairments "significantly limit [his] ability to perform basic work activities." (*Id.* at

---

omitted). "[A] claimant is not disabled if her 'residual functional capacity and vocational abilities make it possible for her to do work which exists in the national economy, but she remains unemployed because of her inability to get work,' or because of 'the hiring practices of employers,' or because [Plaintiff] 'would not actually be hired to do work she could otherwise do.'" *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (quoting 20 C.F.R. § 416.966(c)(1), (3), (7)) (alterations omitted).

6

53.) The ALJ found that Plaintiff's back pain was not a "medically diagnosed impairment" because he "receives no ongoing medical treatment for [that] condition, and uses only over the counter medications for pain." (*Id.*) Proceeding to the third step, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the impairments found in the Listings. (*Id.*)

### 1. Opinion Evidence

The ALJ then considered Plaintiff's medical history and the opinion evidence in the record to determine Plaintiff's RFC. The ALJ noted that Plaintiff had largely recovered from his two open-heart surgeries in 2016 and 2017, and from his laparoscopic colectomy[7] to remove a cancerous mass from his colon in 2017. (*Id*. at 50–52.) The ALJ further cited progress notes from Plaintiff's cardiologist and primary care physician in which Plaintiff claimed to exercise six times per week, though the notes do not indicate what that exercise entailed or how strenuous it was. (*Id.* at 51.) Notably, none of Plaintiff's treating physicians provided an opinion regarding his back pain or his ability to engage in work-related activities. (*See generally id.* at 49–53.)

The ALJ next addressed the opinion of Dr. Lyudmila Trimba, an internist, who performed a one-time consultative examination of Plaintiff for purposes of his DIB application. Dr. Trimba's report stated that Plaintiff experienced "shortness of breath with exertion," and that he had a history of lower back pain, which ranged from a 4/10 to 10/10 in severity. (*Id.* at 510.) Dr. Trimba noted as well that Plaintiff used lumbar support and complained of pain when testing his lumbar range of motion, though "claimant exhibited poor effort in this." (*Id*. at 510–12.) Dr. Trimba diagnosed Plaintiff with a history of low back pain and opined that he had a "moderate limitation in his ability

---

[7] A "[c]olectomy is a surgical procedure to remove all or part of [one's] colon[,]" and "[l]aparoscopic colectomy, also called minimally invasive colectomy, involves several small incisions in your abdomen." Mayo Clinic, "Colectomy," https://www.mayoclinic.org/tests-procedures/colectomy/about/pac-20384631 (last visited 3/2/2022).

7

to sit, stand, and walk for prolonged time, and a moderate limitation in his ability to climb steps, push, pull, or carry heavy objects." (*Id.* at 513.) She further stated that Plaintiff should be "restricted from activities requiring mild or greater exertion." (*Id.*) The ALJ found Dr. Trimba's opinion to be "somewhat persuasive," but "vague and nonspecific" because "the extent of the claimant's limitations were not clearly expressed." (*Id.* at 51–52.)

The ALJ then considered the opinions of two state medical consultants, Dr. R. Pradhan and Dr. Sandra Battis[8], who reviewed Plaintiff's medical records but did not personally examine him. The ALJ found Dr. Pradhan's opinion to be "persuasive"—as compared to Dr. Trimba's "somewhat persuasive" opinion—because "it was based on a careful review of the medical evidence available . . . and [was] consistent with the medical record as a whole." (*Id.*) Dr. Pradhan's report indicates that he relied on only Dr. Trimba's report and one, incomplete tranche of medical records. (*Id.* at 31–33 (indicating that several medical records requests were outstanding at the time of Dr. Pradhan's review).) Dr. Pradhan listed "Disorders of Back [sic]-Discogenic and Degenerative" as Plaintiff's "primary" medically determinable impairment and classified it as "severe." (*Id.* at 35.) Dr. Pradhan concluded that Plaintiff can occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, stand or walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday, without indicating what medical evidence, if any, supported these specific conclusions. (*Id.* at 36–37.)

The ALJ did not address the content of Dr. Battis's opinion, even though Dr. Battis listed diagnoses of rheumatoid arthritis, three bulging discs, and pinched nerves. (*Id.* at 519.) While Plaintiff alleged these conditions in his testimony at the hearing before the ALJ, they were not

---

[8] Dr. Pradhan specializes in oral surgery. (Tr. at 41). Dr. Battis specializes in neuro-musculoskeletal medicine. (*Id*. at 520).

8

listed as "diagnoses" by Dr. Trimba or Dr. Pradhan. (*Id.* at 18.) Otherwise, Dr. Battis's opinion generally agreed with Dr. Pradhan's conclusions about Plaintiff's abilities and limitations. (*Id.* at 522.)

### 2. Testimonial Evidence

The ALJ also considered testimonial evidence from Plaintiff's hearing before the ALJ on May 14, 2019. (*Id.* at 52.) At the hearing, Plaintiff testified that he had worked full time as a hairdresser for 40 years until he "got sick" in December 2016. (*Id.* at 18.) Since then, he stated, he can work only intermittently; six or seven hours in a "good week." (*Id.* 17–18.) He testified further that he felt "tired constantly, out of breath," and had constant, "major back pain" from "vertical bulging discs[] and pinching of [his] back." (*Id*. at 18.) Plaintiff said that tiredness and back pain were the only issues that kept him from working. (*Id*. at 19.) As to his specific limitations, Plaintiff testified that he could walk for no more than 10 minutes before needing to rest, (*id*. at 20), that he could stand for just 20 to 30 minutes before needing to sit to alleviate his back pain (*id*. at 23–24), and that he could sit for only five to ten minutes before his back bothered him again (*id*.).

The ALJ also heard testimony from vocational expert David Vandergoot, who noted that Plaintiff's work as a hair stylist is considered "light in exertion." (*Id*. at 25.) He opined that an individual limited to frequent sitting and occasional standing could not perform Plaintiff's past relevant work as a hair stylist. (*Id*. at 26–27.)

### 3. The ALJ's Findings

The ALJ found that Plaintiff has the RFC to "perform the full range of light work," defined as "the ability to lift or carry ten pounds frequently, and 20 pounds occasionally, and the ability to sit, stand or walk for six to eight hours in an eight-hour workday." (*Id.* at 53–54.) The ALJ determined that this RFC would not prevent Plaintiff from working as a full-time hairstylist, which

9

is considered a "light job." (*Id.* at 54.) Accordingly, the ALJ concluded that Plaintiff had not been disabled, as defined by the Act, from December 24, 2016, through the date of the decision. (*Id.*)

## STANDARD OF REVIEW

Unsuccessful claimants for DIB under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of benefits. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (citation omitted). "'Substantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (*per curiam*) (brackets omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

In determining whether the Commissioner's findings were based on substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (citation omitted). But courts must "defer to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (citation omitted). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki*, 729 F.3d at 175–76.

## DISCUSSION

Plaintiff contends that the ALJ's decision should be reversed and remanded because it "is unsupported by substantial evidence," and "failed to properly evaluate the opinion of consultative examiner, Lyudmila Trimba." (Pl. Br. at 7.) The Court grants Plaintiff's motion and remands the case for the ALJ to reconsider the opinion evidence and develop the record as needed. *See Fontanez v. Colvin*, No. 16-CV-1300 (PKC), 2017 WL 4334127, at *13 (E.D.N.Y. Sept. 28, 2017)

10

("In addition to its authority to affirm, modify, or reverse a final decision, the Court may remand the case for the ALJ to further develop the record, resolve conflicts and ambiguities, or elucidate his or her rationale.").

## I.  The ALJ Failed to Adequately Develop the Administrative Record

### A.  The ALJ's Duty to Develop the Record

Although Plaintiff did not expressly challenge the sufficiency of the record, the Court must independently consider whether the ALJ satisfied her duty to develop the record. *Sanchez v. Saul*, No. 18-CV-12102 (PGD) (DF), 2020 WL 2951884, at *23 (S.D.N.Y. Jan. 13, 2020) ("As a threshold matter, and regardless of the fact that the Plaintiff did not raise an express challenge to the adequacy of the Record, this Court must independently consider the question of whether the ALJ failed to satisfy his duty to develop the Record."), *report and recommendation adopted*, 2020 WL 1330215 (S.D.N.Y. March 23, 2020); *Castillo v. Comm'r of Soc. Sec.*, No. 17-CV-9953 (JGK) (KHP), 2019 WL 642765, at *7 (S.D.N.Y. Feb. 15, 2019).  "[B]ecause a hearing on disability benefits is a nonadversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (citations omitted).

"SSA regulations provide that an ALJ 'shall inquire fully into the matters at issue and shall receive in evidence the testimony of witnesses and any documents which are relevant and material to such matters.'" *Id.* (quoting 20 C.F.R. § 702.338).  "If the [ALJ] believes that there is relevant and material evidence available which has not been presented at the hearing, [she] may adjourn the hearing or, at any time, prior to the filing of the compensation order, reopen the hearing for the receipt of such evidence." *Id.* (quoting 20 C.F.R. § 702.338).  Accordingly, "[i]t is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations and quotations omitted).

11

This duty exists "[e]ven when a claimant is represented by counsel." *Id.* at 112 (citations omitted). The ALJ is required to seek a medical opinion from a treating source, and to follow up if the first request is unsuccessful. 20 C.F.R § 404.1512(b)(1)(i). "Legal errors regarding the duty to develop the record warrant remand." *Wilson v. Colvin*, 107 F Supp. 3d 387, 407 (S.D.N.Y. 2015) (collecting cases).

### B. The ALJ Failed to Request Medical Opinions from Plaintiff's Treating Physicians

Here, the ALJ should have, but did not, request medical opinions from Plaintiff's treating physicians. Although the ALJ received Plaintiff's medical records, including progress notes from Drs. Lau, Procaccino, Vinciguerra, and Yovino, none of the records included a medical opinion about Plaintiff's abilities or physical limitations. (*See* Tr. at 256–465, 474–509, 530–60, 565–658). Notably, there were indications in the records and notes of Dr. Vinciguerra that Plaintiff suffered from ongoing pain and physical limitations due to chronic low back pain. (*Id.* at 569.) The ALJ had a duty to follow up with Plaintiff's physicians to request medical opinions, but there is no indication in the record that the ALJ did so here. *See* 20 C.F.R § 404.1512(b)(1)(i); *Prieto*, 2021 WL 3475625, at *11 (recognizing this duty outside of the "treating physician rule"[9] context).

The Commissioner does not address the ALJ's failure to develop the record, but, like the ALJ, justifies the RFC determination, in part, by reference to the progress notes received from Plaintiff's treating physicians. (Defendant's Brief ("Def. Br."), Dkt. 15, at 15.) The Commissioner focuses on (1) Dr. Yovino's note that Plaintiff claimed he exercised regularly, (2)

---

[9] With respect to claims filed before March 27, 2017, the "treating physician rule" presumptively entitled treating physicians' opinions to controlling weight. *See Prieto*, 2021 WL 3475625 at *8. This rule, however, does not apply to claims filed after March 27, 2017. 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]").

12


Dr. Vinciguerra's note that Plaintiff would likely not require further treatment for his colon cancer, and (3) Dr. Lau's note that Plaintiff was "asymptomatic from the cardiovascular perspective." (*Id*.) But these notes are not medical opinions for purposes of the RFC determination.[10] 20 C.F.R. § 404.1513(a)(2). The record does not contain any medical opinion from a treating physician regarding Plaintiff's ability to perform the physical demands of work activities or his ability to adapt to the work environment.

The ALJ's failure to seek medical opinions from Plaintiff's multiple treating physicians is particularly troubling with regard to Plaintiff's alleged back pain. Plaintiff testified at the ALJ hearing that back pain is the primary reason why he cannot work (Tr. at 19), and the non-examining state medical consultant, Dr. Pradhan, listed Plaintiff's back disorders as a "severe" medically determinable impairment (*id*. at 35). Nonetheless, the ALJ concluded at step two that Plaintiff's back pain was not a medically diagnosed impairment because "he receives no ongoing medical treatment for this condition, and uses only over the counter medications for pain." (*Id.* at 49.) The ALJ's opinion that Plaintiff's lack of treatment for back pain indicates the absence of a medical

---

[10] A medical opinion for purposes of determining an applicant's eligibility for disability insurance benefits is:

> [A] statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities:
> (i)   Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions. . . ;
> (ii)  Your ability to perform mental demands of work activities. . . ;
> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
> (iv)  Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2).

impairment is an "arbitrary and impermissible attempt to substitute [her] lay opinion for competent medical opinion." *Santiago v. Comm'r of Soc. Sec.*, No. 19-CV-4001 (KPF) (KNF), 2020 WL 6530884, at *6 (S.D.N.Y. May 5, 2020). The ALJ does not have the medical expertise to: "(a) opine on what, if any, back pain treatment or therapy is warranted under the circumstances; or (b) interpret medical evidence or the lack thereof under the circumstances." *Id.*; *see also McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983) ("[T]he ALJ cannot arbitrarily substitute [her] own judgment for competent medical opinion.").

"It is fundamentally unfair for the ALJ not to develop the record by obtaining treating sources' opinions while at the same time basing [her] disability determination, *inter alia*, on the ground that the record does not contain any . . . opinions . . . from treating or examining physicians indicating that the claimant is currently disabled." *Blair v. Colvin*, No. 16-CV-5983 (RJS) (KNF), 2017 WL 4339481, at *5 (S.D.N.Y. May 15, 2017) (internal quotation marks omitted), *report and recommendation adopted*, 2017 WL 4342123 (S.D.N.Y. Sept. 27, 2017). Accordingly, by not obtaining the opinions of Plaintiff's treating physicians about Plaintiff's abilities and physical limitations, the ALJ failed to adequately develop the record, and her decision must be remanded on that basis alone. *See Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999) (remanding for failure to develop the record because the ALJ did not obtain "adequate information from [claimant's] treating physician"); *Oliveras ex rel Gonzalez v. Astrue*, No. 07-CV-2841 (RMB) (JCF), 2008 WL 2262618, *6–7 (S.D.N.Y. May 30, 2008) (remanding so the ALJ could make all reasonable efforts to obtain a treating physician's opinion). On remand, the ALJ should, at a minimum, obtain the opinions of Plaintiff's treating physicians regarding his abilities and physical restrictions, especially as they relate to his lower back pain.

**II.      The ALJ's RFC Determination Is Not Supported by Substantial Evidence**

The ALJ's RFC determination is not sufficiently supported by the medical opinions in the record. "[A]n ALJ's RFC determination must be supported by a medical opinion in the record at that time." *Pearson v. Comm'r of Soc. Sec.*, No. 20-CV-3030 (AMD), 2021 WL 3373132, at *4 (E.D.N.Y. Aug. 3, 2021). "[T]he ALJ is not free to form [her] own medical opinion based on the raw medical evidence." *Arias v. Saul*, No. 18-CV-1296 (KAM), 2020 WL 1989277, at *9 (E.D.N.Y. Apr. 25, 2020) (quoting *Goble v. Colvin*, No. 15-CV-6302 (CJS), 2016 WL 3179901, at *6 (W.D.N.Y. June 8, 2016) ("[T]he ALJ's RFC determination must be supported by competent medical opinion[.]") (collecting cases)).

Here, the ALJ based the RFC determination on three medical opinions in the record: (1) the opinion of Dr. Trimba, a one-time consultative examiner; (2) the opinion of Dr. Pradhan, a non-examining state medical consultant; and (3) the opinion of Dr. Battis, another non-examining state medical consultant. (Tr. at 51–53.) While the ALJ found the state medical consultants' opinions to be most persuasive, "[t]he medical opinion of a non-examining medical expert does not constitute substantial evidence and may not be accorded significant weight." *Roman v. Astrue*, No. 10-CV-3085 (SLT), 2012 WL 4566128, at *16 (E.D.N.Y. Sept. 28, 2012); *accord Green-Younger v. Barnhart*, 335 F.3d 99, 107–08 (2d Cir. 2003). Further, the Second Circuit has cautioned that "ALJs should not rely heavily on the findings of consultative physicians after a single examination." *Selian*, 708 F.3d at 419; *accord Colgan v. Kijakazi*, 22 F.4th 353, 363 (2d Cir. 2022). Thus, even if the ALJ had relied most heavily on Dr. Trimba's opinion, her determination would not rest on substantial evidence. Notably here, the ALJ afforded Dr. Trimba's opinion *less* weight than that of Drs. Pradhan and Battis, even though she was the only examining physician—albeit a one-time examiner—to provide a medical opinion in this case.

15

(*See* Tr. at 51–53 (describing Dr. Trimba's opinion as "somewhat persuasive," and Dr. Pradhan's opinion as "persuasive.").)

The Commissioner argues (as the ALJ found) that Drs. Pradhan's and Battis's opinions were persuasive because they were consistent with the medical evidence in the record (*see* Def. Br., Dkt. 15, at 13; Tr. at 53.) But neither the state medical consultants nor the ALJ "explain[ed] how the raw medical evidence could be interpreted to support a finding as to how much plaintiff was capable of lifting, carrying, pushing or pulling." *Arias*, 2020 WL 1989277, at *7. Further, the consistency of the state medical consultants' opinions with the medical record is not "persuasive" where, as here, the record is undeveloped and contains no opinions about the plaintiff's abilities and physical limitations from his treating physicians.

## CONCLUSION

The Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The Commissioner's decision is remanded for further consideration consistent with this Memorandum and Order. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 11, 2022
Brooklyn, New York